Scott *et al. v.* Michael *et al.*

with the rule. Illness of counsel is shown as an excuse for not filing a more elaborate brief.

Motion to dismiss overruled.

Filed Oct. 14, 1891.

---

No. 15,072.

## SCOTT ET AL. *v.* MICHAEL ET AL.

DEED.—*How Construed.*—*Exception in Favor of Grantee.*—*Doubtful Language.* —Where the language of a deed will admit of two constructions, the one less favorable to the grantor is to be adopted. An exception in a deed is to be taken most favorable for the grantee. If the language of a conveyance is doubtful, it must be construed so as to ascertain, if possible, the intention of the parties.

SAME.— *What Passes Under it.*—In a conveyance of property, everything essential to the enjoyment of the property is to be considered, in the absence of language indicating a different intention on the part of the grantor, as passing with it, either as a parcel thereof or appurtenant thereto.

SAME. —*Mill Property.*—*Conveyance of.*— *What it Includes.*—*Maintenance of Dam.*—The conveyance of mill property carries with it, whether the word "appurtenances" be used or not, all the incidents and privileges connected with its use, and this includes the right to maintain a dam, so as to produce a head, or power, equal to that which existed at the time the conveyance was executed.

SAME.—*Right to Maintain Dam.*—*Deprivation of Right.*—*Compensation for Loss.*—The right to maintain a dam at the height it exists at the time of a conveyance of mill property, is of itself property, and a part of the thing sold, and the covenants of the deed extend to and cover the right to maintain the dam at such height, as an incident of the estate and necessary to its enjoyment, and if the grantee is deprived of such right because the grantor had not the right to maintain it at the height covenanted, he is entitled to compensation for such loss.

SAME.—*Right of Flowage.*—*Reference to Mortgage.*—*Effect of.*—Where a deed purported to convey certain mill property, with all its privileges and appurtenances, and then referred to a certain mortgage in which the right of flowage was greatly restricted, the provision in the mortgage can not be regarded as placing a limitation upon the rights and privileges granted. It would require clear and explicit words of limitation

to cut down the express and implied grant of the right of flowage as it existed at the date of the execution of the conveyance.

SAME.—*Direct Language and Words of Recital.—Repugnance Between.—How Construed.*—As between terms directly given as the language of the grantor, and words incorporated by way of recital, from another instrument, in case of repugnance, that which is recited must be rejected, and that which is direct adhered to, as being most likely to express the intention of the parties.

From the Elkhart Circuit Court.

*J. H. Baker* and *F. E. Baker,* for appellants.

*H. C. Dodge* and *E. G. Herr,* for appellees.

MILLER, J.—A complaint in two paragraphs was filed by the appellants against the appellees. The first paragraph seeks to procure the cancellation of a mortgage given by the plaintiffs to secure part of the purchase-price of a mill and appurtenances, on account of a breach of warranty contained in the deed by which the premises were conveyed to the plaintiffs. This deed is made an exhibit, and, omitting the signatures and acknowledgment, is as follows:

"This Indenture Witnesseth: That Enos Michael and Barbara Michael, his wife, of Branch county, in the State of Michigan, convey and warrant to John Anderson of Steuben county and State of Indiana, and Edward G. Scott of Branch county, Michigan, the interest of the said John Anderson to be the undivided one-third, and the interest of the said Edward G. Scott to be the undivided two-thirds of the real estate hereinafter described, for the sum of eight thousand dollars, the following real estate in Elkhart county, in the State of Indiana, to wit: That which is now known as the Benton Centennial Mills, on the Elkhart river, near the town of Benton, together with all privileges, water-powers, flowage and appurtenances of every kind whatsoever thereunto belonging, as the same is recorded in a certain mortgage dated May 12th, 1877, executed by Joseph Harris and James G. Ackerman to Samuel Stetler, and recorded in the mortgage record 20, page 280, in the recorder's office of

Elkhart county, Iudiana, as follows: "All lands in section seven (7) and eight (8), in township thirty-five (35) north, of range seven (7) east, which Peter Darr owned in his lifetime, and a small fraction of land lying near the saw mill south of the river and north of the Fort Wayne road, which comprises all of the land north of the road from the west line of said land to a point where the Fort Wayne road touches the Elkhart river, with the privilege of overflowing so much of the land necessary in which the said Stetlers have any interest and claim; also the west half ($\frac{1}{2}$) of lot numbered nineteen (19) in Boyd's addition to the town of Benton, together with the mills and all the privileges and easements thereto belonging, subject to all taxes that are and may become a lien and come due after January, 1880."

The paragraph avers that at the time the property was sold, and deed executed, the dams and embankments for storing the water by which the mills were propelled were maintained at the height of six feet, and that without their maintenance at that height the mills could not be operated with success and profit, but were worthless; that after the execution of the deed a suit was commenced against the plaintiffs and Anderson, charging that at and prior to the date of said deed the dams and embankments were higher by two feet than the owners of the mill had a right to erect and maintain them; that the grantor in the conveyance to them was notified and defended the action; but that a judgment for damages and costs was rendered against the plaintiff and Anderson, and also a decree for the reduction of the dam to the height of three feet, and that pursuant to the decree the sheriff of the county has cut them down to that height.  See *Anderson* v. *Hubble,* 93 Ind. 570.

The defendants successfully demurred to this paragraph, and the ruling of the court is assigned as error.

The second paragraph of complaint alleged title in the plaintiff for two-thirds of the same property, and asked to have his title to the same quieted and set at rest.

The defendants, Forney & Forney, who had become the owners of the unpaid notes and mortgage in controversy, filed a cross-complaint seeking to foreclose their mortgage.

A demurrer was overruled to the cross-complaint, and this ruling is assigned as error.

The appellants answered the cross-complaint, pleading substantially the same facts that had been set up in the first paragraph of his complaint, and a demurrer was filed and sustained to this pleading.

No objection to the sufficiency of the cross-complaint has been pointed out, and that assignment of error may be treated as having been waived.

The rulings of the court in sustaining the demurrers to the first paragraph of the amended complaint and to the answer to the cross-complaint present the same questions, and may be discussed together.

The contention of the appellants is that the deed conveyed, as an incident to the grant, the dam as it stood at the date of the deed, and that the covenants in the deed assumed to protect him in the quiet enjoyment of the grant.

The contention of the appellees, on the other hand, is, that the deed limits the conveyance and covenants for the overflow of land to " so much of the land necessary in which the said Stetlers have any interest and claim ; " and that, therefore, the paragraphs of complaint and answer under consideration are bad for want of an averment that the lands overflowed, which gave the right of action on account of which the dam was lowered, were lands " in which the said Stetlers had an interest."

It is well settled law that when the language of a deed will admit of two constructions the one less favorable to the grantor is to be adopted; not that the words are to be twisted out of their proper meanings, but that where, after other efforts have failed to show which of the expressions show the meaning of the parties, the one most disadvan-

tageous to the person who used them is to be adopted.    2 Dev. Deeds, section 848.

An exception in a deed is to be taken most favorable for the grantee; and if it be not set down and described with certainty, the grantee shall have the benefit of the defect. *Jackson* v. *Myers*, 3 Johns. 388.

If the language of a conveyance is doubtful, it must be construed so as to ascertain, if possible, the intention of the parties : " In trying to ascertain that intention, it is the duty of a court to assume, as nearly as possible, the position of the contracting parties, and to question the circumstances of the transaction between them, and then to read and interpret the words which they used in the light of those circumstances." *Truett* v. *Adams*, 66 Cal. 218.

In conveyances of property everything essential to the enjoyment of the property granted is to be considered, in the absence of language indicating a different intention on the part of the grantor, as passing with it, either as a parcel thereof or appurtenant thereto. *Sparks* v. *Hess*, 15 Cal. 186.

The conveyance of mill property carries with it all the incidents and privileges connected with its use, and this includes the right to maintain a dam, so as to produce a head or power equal to that which existed at the time the conveyance was executed.    *Lammott* v. *Ewers*, 106 Ind. 310; *Scott* v. *Stetler*, 128 Ind. 385.

The right to maintain a dam at the height it exists at the time of a conveyance of mill property, is of itself property, and a part of the thing sold, and the covenants of the deed extend to and cover the right to maintain the dam at such height, as an incident of the estate and necessary to its enjoyment, and, if the grantee is deprived of such right because the grantor had not the right to maintain it at the height covenanted, he is entitled to compensation for such loss.    *Scheible* v. *Slagle*, 89 Ind. 323 ; *Adams* v. *Conover*, 87 N. Y. 422 ; *Bowling* v. *Burton*, 101 N. C. 176; *Strickler* v.

*Todd*, 10 Serg. & Rawle, 63 ; *Maddox* v. *Goddard*, 15 Me. 218 (33 Am. Dec. 604) ; Angell Watercourses, section 153*a*.

The word "appurtenances" need not be used in a conveyance of mill property, for without added words the deed of the mill, however described, will include the site, dam, water privileges and all other things essential to the beneficial enjoyment of the mills as an incident of the grant. 2 Dev. Deeds, section 863 ; Angell Watercourses, *supra;* Tabor v. *Bradley*, 18 N. Y. 109 ; *United States* v. *Appleton*, 1 Sum. 492.

The deed under consideration is inartistically drawn, and the confusion, apparent from a mere reading of the instrument, probably arises from the attempt of the draughtsman to incorporate the description of the premises contained in a mortgage. At first the deed purports to convey by words of general description what is known as the "Benton Centennial Mills," with all its privileges and appurtenances of every kind ; and then for a further description refers to the mortgage, in which the supposed limitation of the right of flowage to the Stetler land is contained. The concluding clause again contains words amply sufficient to convey all the mills, privileges and easements, either on the lot in the town, or the whole property described in the deed.

The proper construction to be put upon the instrument is not free from difficulty, but we have arrived at the conclusion that, taking the deed as a whole, it was not intended to and does not limit the right of flowage to the lands on which the Stetlers had an interest. The words purport, on their face, to be a grant, and not a limitation, and it is only by the doctrine of exclusion that they can be so construed. In the face of the full and repeated words granting not only the mills, but the easements and appurtenances, we can not believe that the parties intended by the use of these words, apparently copied from the mortgages, to put a limitation upon the right and privileges granted.

The maintenance of the dam at the full height of six feet,

according to the allegations of the pleadings, was absolutely essential to the beneficial enjoyment of the mills; it was a part, and an important part, of the property which he purchased, and entered largely into its value. It must have appeared to the purchaser at the time he bought the property that his grantor had the right of flowage to the extent and in the measure then existing, and necessary to carry on the business for which the mill·had been erected, and was used. Under these circumstances it seems to us that it would require clear and explicit words of limitation to cut down the express and implied grant of the right of flowage as it then existed.

This instrument may, we think, be viewed from another standpoint; that is, after granting the mills and appurtenances, by terms of general description, reference is made to the mortgage for a further description, the description from the mortgage purports to be set out *in hæc verba;* no words or marks are used to indicate just where the parts copied from the mortgage terminate; but we may infer that it includes all that part of the instrument that is descriptive of the premises conveyed, and ends with the word " Benton ;" and that the clause " together with the mills, and all privileges and easements thereunto belonging, subject to all taxes that are or may become a lien, and come due after January, 1890," are words of grant, applying not merely to the town lot, but to the whole premises conveyed. This view is strengthened by the fact that the language used is in entire harmony with that portion of the instrument that immediately precedes the reference to the mortgage.

As between terms directly given as the language of the grantor, and words incorporated by way of recital, from another instrument, we must, in case of repugnance, reject that which is recited, and adhere to that which is direct, as being most likely to express the intention of the parties, just as the written portion of a deed, or other contract, will prevail over that which is printed; the presumption being

that the draughtsman, in copying the description, improperly included terms and conditions applicable only to the mortgage. We are of the opinion that the court erred in sustaining the demurrer to the first paragraph of the amended complaint, and to the answer to the cross-complaint.

Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.

Filed Oct. 6, 1891.