SCHOFIELD ET AL. *v.* GREEN

[No. 17,259. Filed September 29, 1944. Rehearing Denied November 18, 1944.]

*John W. Hornaday,* of Lebanon, and *R. P. Bundy* of Zionsville, for appellants.

*Frank E. Hutchinson* and *Scrifres & Hollingsworth,* all of Lebanon, for appellee.

DRAPER, P. J.—The will of Mary A. Pitzer, which was probated on March 28, 1903, contained the following item, to-wit: "I give and devise to my nephew, Emmett Pitzer, for his use and benefit during his lifetime the following described real estate in Boone County, in the State of Indiana, to-wit: the Northeast Quarter of the Southwest Quarter of Section 32, Township 18 North of Range 2 East, and at his death the same to descend to his surviving children." Emmett Pitzer, then a resident of Boone County, Indiana, took prompt possession of the land, but later removed to Oklahoma where he resided for several years prior to October 11, 1938, when he died, leaving surviving him his four children, the appellants.

He had failed to pay the taxes for said real estate assessed in his name for the year 1933, and they became delinquent. The appellee purchased the real estate at tax sale on February 10, 1936, and on February 14, 1938, no person having redeemed from the sale, the Auditor issued a tax deed which was recorded and which described said real estate. He took immediate possession thereof and has ever since, under claim of ownership, collected the rents, issues and profits thereof and has paid current taxes as they became due. The annual rental value of the land at all times exceeded the annual taxes. The public records of Boone County disclosed that Emmett Pitzer had a life estate in said real estate. Appellants do not admit, but neither do they question, the validity of the tax deed nor the regularity of the sale or of the proceedings leading up to it.

Both parties assert ownership of the land, and that is the only issue raised by the pleadings that is discussed in the briefs. The court upon proper request found the

facts specially substantially as above condensed, stated conclusions of law thereon favorable to appellee and rendered judgment quieting his title to the real estate.

We are called upon to determine whether the tax deed issued pursuant to the sale for delinquent taxes assessed against the life tenant conveyed only the interest of the life tenant, as claimed by appellants, or whether it also carried with it the fee, as contended by the appellee.

The appellants base their contention principally upon the proposition (1) that taxes in this jurisdiction are a personal liability of the taxpayer—a liability in personam and not in rem, and (2) that the interest taken by the appellants under the will was a contingent remainder which was not subject to assessment for taxation, or sale for taxes.

A construction of their statutes by the courts of the various states has given rise to two opposing theories and two distinct doctrines upon this subject, the adoption of one of which would allow the appellant to prevail, while the other would not.

The language of the will is not ambiguous. It created a contingent remainder in those of the life tenant's children who would be living at the time of the latter's death. *Hackleman* v. *Hackleman* (1928), 88 Ind. App. 204, 146 N. E. 590, 169 N. E. 539. *Stephens and Another* v. *Evans' Administratrix* (1868), 30 Ind. 39.

Our legislature, following the constitutional mandate, has provided that: "Real property shall be assessed in the place where situated, and to the owner, if known; if not, then to the occupant, if any; and if there be no occupant, then as unknown. . . ." § 64-501 Burns' 1943 Replacement of Vol. 11; that all property within the jurisdiction of the state, not expressly exempt, shall be subject to taxation upon assessment at its true cash

value, § 64-103, Burns' 1933; for a demand upon the taxpayer, the levy upon and sale of his personal property to satisfy the taxes and for further proceedings for the recovery thereof, § 64-1511, Burns' 1943 Replacement of Vol. 11; that a lien for unpaid taxes shall attach on all real estate, § 64-2825, Burns' 1943 Replacement of Vol. 11; for the sale of real estate to satisfy taxes unpaid, and that the proper officer shall execute ". . . in the name of the state, a conveyance of the real estate so sold, which shall vest in the grantee an absolute estate in fee simple . . .", § 64-2401, Burns' 1943 Replacement of Vol. 11. It has also provided that: "The sale of lands for taxes shall not be invalid on account of such lands having been listed or charged on the duplicate in any other name than that of the rightful owner." Section 64-2414, Burns' 1943 Replacement of Vol. 11, and that the owner, occupant or any other person having *an interest* in the land sold for taxes may redeem the same within two years, § 64-2301, Burns' 1943 Replacement of Vol. 11.

It is settled law in this state that general taxes constitute a personal liability against the owner of the property upon which the assessment is based. *Prudential Casualty Co.* v. *State* (1924), 194 Ind. 542, 143 N. E. 631. It is also true that these taxes should have been paid by the life tenant during his occupancy of the land, *Figgins* v. *Figgins* (1913), 53 Ind. App. 43, 101 N. E. 110, at least where the income from the property is sufficient to discharge them, as was the case here, for it is the duty of the life tenant, under such circumstances, to pay the taxes and if by his failure to do so the property is lost to the remaindermen, the life tenant is liable. *Clark* v. *Middlesworth* (1882), 82 Ind. 240. His failure to pay the taxes creates a lien "in the first instance" upon his interest in the real

estate, *Figgins* v. *Figgins, supra.* There was no personal liability against the appellants to pay, and it is at least doubtful whether the appellants had anything which was subject to taxation, their interest being merely a possibility or expectancy which under the common law was "neither devisable, descendible, alienable by voluntary conveyance nor subject to taxation," and if they did have, it had never been assessed, and our attention has been called to no method under our statutes whereby it could be.

But does it follow that because of these things the appellants were unaffected by the sale? We think not. The tax is assessed upon the land itself and not upon any estate therein. Our statutes impose a lien upon the land itself, as well as a personal liability upon those primarily charged with the payment. "The fact that someone is personally liable for the taxes does not, of itself, relieve the real estate of the tax lien; that lien can be removed only by the actual payment of the taxes." *Gable* v. *Seiben* (1893), 137 Ind. 155, 36 N. E. 844. Our statutes provide for the sale of the land itself and they do not provide as do those of several jurisdictions where a different result is reached, that the purchaser at a tax sale shall take the title of the one assessed with the taxes, or will take the interest and title of the one whose duty it was to pay, but on the contrary expressly provide, as above shown, that the purchaser shall take an "absolute estate in fee simple," and we are not at liberty to write in another meaning, although it should of course be remembered that we are here assuming regularity in all things connected with the deed and proceedings prior thereto.

Taxes are imposed as an incident of sovereignty. The lien for taxes is paramount and this real estate must

bear its fair share of the tax burden. While it was the duty of the life tenant to pay these taxes, that was a matter between him and the remaindermen, and it was incumbent upon them, if they wished to protect their expectant interest, to see to it that the life tenant paid them, or, failing that, to pay the taxes themselves, or in a proper case recover the property under the provisions of § 64-2413, Burns' 1943 Replacement of Vol. 11, and in either of the latter events, to seek reimbursement from the life tenant or his estate. Whether their interest was such as to support a right to redeem from the sale is a question which we need not decide.

The most cogent reason for the rule of our own cases requiring the life tenant to "keep the taxes down" is stated to be that it is his duty to preserve the remainder and prevent its loss by a sale of the property. Such loss could not result if the title acquired by the purchaser at the sale was derivative and therefore no greater than was held by the delinquent taxpayer. We are not unaware of the fact that a different conclusion has been reached in several jurisdictions under the peculiar wording of their own statutes, but we believe that the result here reached is in accord with the great weight of authority. Nor do we overlook the case of *Thompson* v. *McCorkle* (1893), 136 Ind. 484, 34 N. E. 813, 36 N. E. 211, in which our Supreme Court held that a wife's inchoate interest was not affected by a sale of real estate for taxes thereon owned by the husband during his lifetime. There is ample respectable authority to the contrary, but at any rate the facts in that case distinguish it from this one, especially when it is remembered that "the law is jealous in the protection of the statutory rights of widows akin to dower" 17 Am. Jur. p. 656.

The appellants assert that the conclusions of law, to which they excepted and which were to the effect that the law is with the appellee and against the appellants, and that the appellee is entitled to have his title quieted as against appellants, are not supported by the findings of fact. The findings with regard to appellee's ownership of the land show only that he purchased the land and received a tax certificate, and that the Auditor thereafter "issued a tax deed to the said Emery T. Green, defendant herein, for the said real estate," which said deed was recorded. There is no finding that such deed was executed, witnessed or acknowledged by the persons designated by the statute. § 64-2404, Burns' 1943 Replacement of Vol. 11. The findings are not sufficient to support the conclusions upon which the judgment quieting appellee's title was based. *Essex* v. *Meyers* (1901), 27 Ind. App. 639, 62 N. E. 96; *Green* v. *McGrew* (1905), 35 Ind. App. 104, 72 N. E. 1049, 73 N. E. 832.

The judgment is therefore reversed and the cause remanded, and since it appears to us that the ends of justice will best be served by a new trial of the cause, the court below is directed to grant a new trial, first permitting the reshaping of issues, if requested. § 2-3234 Burns' 1933; *Murdock* v. *Cox* (1888), 118 Ind. 266, 20 N. E. 786.

NOTE.—Reported in 56 N. E. (2d) 506.